DENNIS GIL BERNARDEZ,

        *Petitioner,*

   v.

UNITED STATES OF AMERICA,

        *Respondent.*

Criminal Action No. 1:09-cr-216
Civil Action No. 1:12-cv-1144
Hon. Liam O'Grady

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner's Amended Motion under 28 U.S.C. §

2255 to vacate, set aside, or correct his sentence (Dkt. No. 180) as well as his Supplemental

Motion under 28 U.S.C. § 2255. (Dkt. No. 226). Petitioner raises seventeen claims in support of

his Motions to vacate his July, 29, 2009 conviction. The Court conducted an evidentiary hearing

in this matter on June 13, 2016. For the reasons discussed below, Petitioner's Motion is

**DENIED** and the petition is **DISMISSED**.

### I. BACKGROUND

On July 29, 2009, following a seven-day jury trial, Petitioner was convicted of twelve

felony counts: one count of conspiracy to commit assault with a dangerous weapon in aid of

racketeering in violation of 18 U.S.C. § 1959(a)(6); one count of conspiracy to commit murder in

aid of racketeering in violation of 18 U.S.C. § 1959(a)(5); three counts of attempted murder in

aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) & (2); three counts of assault with a

dangerous weapon in aid of racketeering in violation of 18 U.S.C. § 1959(a)(3) & (2); three

counts of use and discharge of firearm during a crime of violence in violation of 18 U.S.C. §

924(c)(1) & (2); and one count of illegal alien in possession of firearm in violation of 18 U.S.C.

§ 922(g)(5). Dkt. No. 62. On November 6, 2009, trial counsel filed a later-granted motion to withdraw as counsel. Dkt. Nos. 90, 97. On June 30, 2010, Petitioner's motion for a new trial was denied. Dkt. Nos. 117, 123. Petitioner filed a notice of appeal of his conviction on July 12, 2010, arguing that § 924(c) mandated concurrent sentences in his case. Dkt. Nos. 125. The Fourth Circuit Court of Appeals affirmed Petitioner's conviction on July 18, 2011, finding that § 924(c) did not mandate concurrent sentences in this case. Dkt. No. 142.

Petitioner filed a motion to vacate his conviction pursuant to 28 U.S.C. § 2255 on October 11, 2012. Dkt. No. 157. Petitioner then filed a motion to amend or supplement his petition. Dkt. No. 177. Now pending before the Court are Petitioner's amended motion to vacate under 28 U.S.C. § 2255 and his supplemental motion under 28 U.S.C. § 2255. Dkt. Nos. 180, 226. The Government has responded to the motions. Dkt. Nos. 195, 230. Petitioner filed a reply brief to the first of the Government's responses. Dkt. No. 197. On June 13, 2016, the Court held an evidentiary hearing in regards to several of Petitioner's claims. Dkt. No. 219.

## II. LEGAL STANDARD

A petitioner is entitled to relief under 28 U.S.C. § 2255 only in the extraordinary event that he demonstrate: (1) a lack of jurisdiction by the convicting court; (2) constitutional error; or (3) legal error so grave as to be "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (citing 28 U.S.C. § 2255). The petitioner bears the burden of proving his grounds for relief by a preponderance of the evidence. *See Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965). It is well settled that bare, conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. *See, e.g., United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013), *cert. denied*, 135 S. Ct. 47 (2014).

A claim of ineffective assistance of counsel may properly be asserted for the first time in a § 2255 petition. *See United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991). In *Hill v. Lockhart*, the Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S. 52, 58 (1985). To satisfy the first part of the *Strickland* test, a petitioner must establish that counsel failed to provide reasonably effective assistance; that is, the counsel's conduct fell below an objective standard of reasonableness in light of the circumstances at the time. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *see also Williams v. Kelly*, 816 F.2d 939, 950 (4th Cir. 1987) ("Counsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another."). Second, a petitioner must "show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Importantly, a court need not review the reasonableness of counsel's performance if the petitioner fails to show prejudice. *Quesinberry v. Taylor*, 162 F.3d 273, 278 (4th Cir. 1998) (citing *Strickland*, 466 U.S. at 697).

## III. DISCUSSION

Between the amended and supplemental motions filed in this matter, Petitioner raises seventeen grounds for modification, set aside, or vacatur of his sentence. This memorandum addresses the claims in turn.

## A. Ineffective Assistance of Counsel: Insufficient Preparation for Direct and Cross-Examination

Petitioner argues that trial counsel was ineffective for failing to prepare him to testify and failing to fully explain that he would be subject to cross-examination. Petitioner claims that he was unprepared, nervous, and confused while on the witness stand and that he appeared unreliable due to trial counsel's inadequate preparations.

In response, the Government claims that trial counsel did in fact prepare Petitioner to testify and did inform him of his exposure to cross-examination. The Government further contends that Petitioner has failed to allege any way in which greater preparation would have affected the outcome of Petitioner's trial.

Failure to prepare a defendant witness for direct and cross-examination is objectively unreasonable under the first prong of *Strickland*. *See United States v. Rhynes*, 218 F.3d 310, 319 (4th Cir. 2000) ("more than one lawyer has been punished, found ineffective, or even disbarred for incompetent representation that included failure to prepare or interview witnesses"); *see also Wolford v. United States*, 722 F. Supp. 2d 664, 694 (E.D. Va. 2010) ("trial counsel's failure to discuss with Wolford any of the specific questions that he planned to ask her during the course of her testimony, combined with his failure to prepare her for cross-examination in any respect, was objectively unreasonable.").

Trial counsel's preparation of Petitioner for direct and cross-examination was objectively reasonable in light of trial counsel's testimony in the evidentiary hearing, Petitioner's corroboration of that testimony, and Petitioner's contradiction of the allegations in his petition for relief. *See United States v. Burgos*, 94 F.3d 849, 868 (4th Cir. 1996) (holding the factfinder responsible for "[d]etermining credibility of witnesses and resolving conflicting testimony.").[1] During the evidentiary hearing on June 13, 2016, trial counsel stated that he spent thirty minutes discussing with Petitioner his testimony related to the duress defense and his obligation to tell the truth on the witness stand. Dkt. No. 223 59:20–24. When asked whether trial counsel ever went over the questions he would be asking Petitioner, Petitioner corroborated trial counsel's assertion. *See id.* 15:22–23 ("[Trial counsel] told me about some questions I might be asked.").

---

[1] The Court also finds it apparent from the evidentiary hearing that Petitioner understood that it was his decision to testify. Dkt. No. 223 25:3–16.

In testifying this way at the evidentiary hearing Petitioner also contradicted his claim that "never in [trial counsel's] visits at jail [did he] prepare[] [Petitioner] to give testimony during jury trial." Dkt. No. 180 at 5. Petitioner further testified that trial counsel came to the prison and explained to Petitioner that he should look the judge and the jury in the eyes. Dkt. No. 223 24:5–17. In addition to indicating that trial counsel did prepare Petitioner to testify, this statement directly conflicts with Petitioner's allegation that trial counsel "never explained that when you sit on the stand you must always have eye contact with the jurors when giving testimony to jurors." Dkt. No. 180 at 5. Though Petitioner claims he was not prepared for cross-examination, he admits that trial counsel "said I was going to be asked questions about the tattoos and that I should show them my tattoos." Dkt. No. 223 31:21–22.[2] In short, Petitioner's allegations that he was inadequately prepared to testify are not credible because his own statements at the evidentiary hearing conflict with these allegations. Further, these statements corroborate trial counsel's version of events. Petitioner has failed to meet his burden of proving that trial counsel performed unreasonably because the evidence adduced at the evidentiary hearing, coupled with Petitioner's lack of credibility, indicates that trial counsel did in fact prepare Petitioner for direct and cross-examination.

Even if Petitioner could meet the performance prong of *Strickland*, he would be unable to prove that the result of his trial would have been different had he been better prepared to testify. A petitioner cannot show prejudice from counsel's failure to prepare him for direct and cross-examination if there exists an "overwhelming amount of testimony and evidence of guilt" such that "it cannot reasonably be argued that the result of the trial would have been different had [defendant]'s trial testimony differed in any respect." *Wolford*, 722 F. Supp. 2d at 695; *see also*

---

[2] The Court also finds unpersuasive Petitioner's contention that he could not understand counsel in light of counsel's demonstrated ability to speak Spanish and counsel's use of an interpreter during visits with Petitioner. Dkt. No. 223 9:8–9, 33:15–21, 34:10–12.

*United States v. Williams*, 1989 U.S. App. LEXIS 21796, at *17 (4th Cir. Dec. 11, 1989) (finding that counsel's failure to adequately prepare an expert defense witness did not prejudice defendant due to "the overwhelming evidence of [defendant's] guilt and the other testimony offered in this case."). In the context of counsel failing to advise a defendant to take the stand, the Fourth Circuit has declined to find prejudice when a defendant "provides no concrete evidence of what he would have testified to in exculpation." *United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004).

Petitioner says that he was nervous and confused during his testimony, Dkt. No. 180 at 5, but he does not identify anything exculpatory to which he would have testified had he not been nervous or confused. The abundant eyewitness testimony and the video depicting Petitioner's acts are so inculpatory that Petitioner cannot reasonably claim that any of his testimony would have changed the outcome of his trial. *See Wolford*, 722 F. Supp. 2d at 695.

Because trial counsel adequately prepared Petitioner for direct and cross-examination, and because Petitioner cannot demonstrate any prejudicial effect if trial counsel had not done so, the Court denies this ground for relief.

## B. Improper Sentencing Enhancement under 18 U.S.C. § 924(c)

Petitioner argues that the sentence enhancement he received pursuant to 18 U.S.C. § 924(c) violated the Supreme Court's ruling in *Alleyne v. United States*, 133 S. Ct. 2151 (2013). In *Alleyne*, the Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Id.* at 2155. Petitioner was sentenced to a ten-year mandatory minimum term on Count 9 and mandatory minimum sentences of twenty-five years each on Counts 10 and 11. Petitioner maintains that the elements of the offenses in Counts 9 through 11 were not presented to the jury and therefore violate the *Alleyne* mandate.

6

The Government counters that *Alleyne* does not apply to Petitioner's sentencing because that Supreme Court decision is not retroactive and it was decided more than two years after Petitioner's conviction became final. Further, the Government contends that if *Alleyne* did apply to Petitioner's claim, the elements of the mandatory minimum claims were presented to the jury.

Courts in this district have repeatedly held that "[a]lthough *Alleyne* did announce a new rule of criminal procedure, the rule is not retroactive on collateral review." *United States v. Wilson*, No. 3:06CR164-HEH, 2016 WL 1192676, at *2 (E.D. Va. Mar. 21, 2016); *see also Henderson v. United States*, No. 1:09CR102, 2014 WL 3891670, at *2 (E.D. Va. Aug. 7, 2014) (same); *United States v. Surratt*, 797 F.3d 240, 249 (4th Cir. 2015) ("Quite the contrary: courts have held that Alleyne does not apply retroactively."), *reh'g granted en banc and vacated as moot*, *United States v. Surratt*, 855 F.3d 218, 219 (4th Cir. 2017).

Petitioner's judgment became final on August 9, 2011. Dkt. No. 144. Because Petitioner's judgment became final before the decision in *Alleyne* in 2013, and that case does not apply retroactively, Petitioner's claim for relief on this count is procedurally barred.

## C.   Ineffective Assistance of Counsel: Failure to Convey Acceptance of Plea

Petitioner claims that trial counsel was ineffective for failing to convey to the Government that Petitioner intended to accept a 22 year plea agreement. The Government responds by arguing that trial counsel effectively addressed all plea offers, none of which Petitioner intended to accept.

Providing "incorrect and incomplete legal advice to [a client] during the plea negotiation process [is] objectively unreasonable" under the first prong of the *Strickland* test. *Wolford*, 722 F. Supp. 2d at 689. Defense counsel renders ineffective assistance by failing "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be

favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). A failure to communicate informal plea offers may also constitute ineffective assistance of counsel. *See Young v. United States*, No. 2:09-CR-00223-01, 2016 WL 5496517, at *7–8 (S.D.W. Va. Sept. 29, 2016), *aff'd*, No. 16-7577, 2017 WL 1363886 (4th Cir. Apr. 12, 2017) (surveying jurisdictions and finding that "it is at least arguable that failure to communicate a preliminary communication . . . could constitute deficient performance.").

Trial counsel's assistance was objectively reasonable because Petitioner never intended to accept, nor did he attempt to convey acceptance of, a plea offer.[3] The Court credits trial counsel's testimony that "it never came across that [Petitioner] was interested in pleading, to enter a plea" due to a number of corroborating circumstances. Dkt. No. 223 52:20–21. First, Petitioner never asserted in trial or at sentencing that he had sought to accept a plea. *See Fernandez-Gradis v. United States*, No. 3:14-cv-575-RJC, 2016 U.S. Dist. LEXIS 133498, at *21–22 (W.D.N.C. Sep. 27, 2016) (finding that a petitioner presented no evidence of counsel's failure to communicate acceptance of a plea because "at no time during the trial or sentencing proceedings related to Petitioner did Petitioner assert that he sought to accept a Government plea offer."). Second, Petitioner's consistent reluctance to admit wrongdoing in connection with the shooting indicates that he never intended to plead guilty. Trial counsel's testimony at the evidentiary hearing supports this inference. *See United States v. Marsh*, No. 3:11CR128-2-HEH, 2015 U.S. Dist. LEXIS 121622, at *30 (E.D. Va. Sep. 11, 2015) (finding that petitioner did not intend to accept a plea when "[trial counsel] also provided an extensive and detailed account of how [petitioner] refused at any time to admit to her involvement in the conspiracy as described in the Statement of Facts."). Trial counsel testified that, when presented with a plea offer,

---

[3] The Court assumes for purposes of analysis that there was an informal plea offer of 22 years but notes that the evidence of such an offer is scant.

Petitioner said, "for what? I didn't do anything wrong. These people were the ones who attacked us first." Dkt. No. 223, 38:1–9. According to trial counsel, in other words, Petitioner felt he was justified because of an earlier altercation between one of his victims and one of his co-defendants. Trial counsel also stated that "there was absolutely no plea offer that was acceptable to him, it wasn't as though he had done anything wrong." Dkt. No. 223, 47:16–18.

Petitioner's statements corroborate trial counsel's assertion that Petitioner never intended to accept a plea. For example, Petitioner mentions the earlier altercation between his victim and his co-defendant on at least three occasions in his amended petition alone. *See, e.g.,* Dkt. No 180 at 10 ("[T]hey attacked Petitioner's co-defendant Orantes and his pregnant grilfiend [sic] with a very violent act."); *see also id.* at 12, 14. Petitioner also spoke about this altercation at least four times during his testimony at trial. Dkt. No. 109 at 876:2–3, 876:20–24, 879:11–13, 900:22–24. Petitioner's frequent references to this event support trial counsel's testimony that Petitioner felt he was justified in shooting his victims and thus did not intend to accept a plea.

In addition, at sentencing Petitioner said, "I ask forgiveness to the authorities and to you for having returned illegally to the States. I never thought that returning illegally would be a serious crime. So, I ask forgiveness to the persons I have offended." Dkt. 111, 51:4–8. Petitioner's characterization of his offense as simply illegal reentry and his failure to mention the shootings gives rise to an inference that, even after trial, he was unwilling to admit to the conduct that would constitute a guilty plea.

Petitioner also cannot point to a subsequent accepted plea as evidence of his intention to accept the first plea—in fact, he rejected a subsequent plea offer. *See Frye*, 566 U.S. at 150 (finding that a petitioner's "acceptance of [a] less favorable plea offer indicate[s] that he would have accepted the earlier (and more favorable) offer.").

9

Finally, in the absence of any explanation from Petitioner as to why trial counsel would not want to accept a plea, this Court chooses to credit trial counsel's statement that "it was a case I never wanted to go to trial on [sic] with the evidence that was there." Dkt. No. 223, 48:23–24. Trial counsel's reluctance to go to trial supports the notion that Petitioner never intended to plead guilty and chose to proceed to trial. Trial counsel could not have performed unreasonably by failing to convey acceptance of a plea that Petitioner never intended to accept.

Petitioner also fails to establish prejudice from his non-acceptance of a guilty plea. To satisfy the second prong of *Strickland*, a petitioner convicted after a trial must demonstrate that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

Petitioner could not establish prejudice because there is not a reasonable probability that the Court would have accepted the terms of a 22 year plea agreement. The Court's statement at sentencing indicates that such a sentence would likely be rejected as too short:

> There could be no clearer indication that you are a tremendous danger to our community. And there is absolutely no question that you should not be freed into society again. The seriousness of this offense, offenses, the need to deter you and others from crime, promote respect for the law in every respect requires me to sentence you to a term which guarantees that you won't go back into society.

Dkt. 111, 52:16–22. Because Petitioner cannot establish unreasonable performance and prejudice, this ground for relief fails.

**D.  Consecutive Sentences in Violation of Double Jeopardy Clause**

Petitioner contends that his sentences on Counts 9, 10, and 11 violate the Double Jeopardy Clause of the United States Constitution because they constitute a second conviction for the same acts addressed in the other Counts. Petitioner points to two decision in other circuits, *United States v. Beckett*, 208 F.3d 140 (3rd Cir. 2000) and *United States v. Roy*, 408 F.3d 484 (8th Cir. 2005), in which courts vacated convictions on certain counts as duplicative.

The Government counters that Petitioner has procedurally defaulted his Double Jeopardy claim because he raised essentially the same claim (framed as a matter of statutory interpretation) on direct appeal to the Court of Appeals, where the claim was rejected. The Government adds that even if the claim is not procedurally defaulted, it is without merit. The Government distinguishes *Beckett* because the duplicative counts in that case were lesser included offenses of other counts in the conviction and *Roy* because the two charges there arose out of the same assault by the defendant against a single federal officer. By contrast, the Government notes that Counts 9, 10, and 11 are not lesser included offenses and account for Petitioner's discharge of a firearm at three separate people as opposed to a single act against a single individual.

The procedural default rule bars the Court from reviewing a claim absent a showing of cause and prejudice or actual innocence if the movant could have raised, but did not raise, the claims on direct appeal. *Bousley v. United States*, 523 U.S. 614, 622–23 (1998); *see also United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009) (internal quotation marks omitted) (citation omitted) (explaining that a petitioner who waives the right to appeal "is not precluded from filing a petition for collateral review. But he is precluded from raising claims that are the sort that could have been raised on appeal.").

On direct appeal to the Court of Appeals, Petitioner (and his co-defendants) argued that "§ 924(c) does not require consecutive sentences for a 'single use,' as they characterize the shots fired at Kuk, Wilson, and Beck." *United States v. Cruz*, 439 F. App'x 209, 212 (4th Cir. 2011). Neither Petitioner, nor his co-defendants, alleged in the appeal that the consecutive sentences for a "single use" violated their rights under the Double Jeopardy Clause. The Court of Appeals found that "the district court did not err when it imposed consecutive sentences for Bernardez' and Aguilar Orantes' multiple § 924(c) convictions." *Id.* at 213.

The foregoing demonstrates that Petitioner effectively raised the Double Jeopardy claim before the Court of Appeals and that as a result the claim has been procedurally defaulted. *See Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir.1976) (per curiam) ("Boeckenhaupt will not be allowed to recast, under the guise of collateral attack, questions fully considered by this court in [his direct appeal]."). But even if Petitioner's statutory construction claim on direct appeal is not effectively the same as his Double Jeopardy claim on collateral review, the Double Jeopardy claim is still procedurally defaulted because it could have been raised on direct appeal and was not. *See Strom v. United States*, No. 1:12CR159 (JCC), 2017 WL 2444356, at *4 (E.D. Va. June 6, 2017) ("For a claim to be viable through a § 2255 petition, it must first be raised on direct appeal.") (quoting *Brooks v. United States*, 2007 WL 2688228, at *2 (E.D. Va. Sept. 5, 2007)).

Petitioner can only overcome the procedural default barrier by asserting either: "(1) actual innocence; or (2) cause and prejudice for failure to raise the issues on direct appeal." *Strom*, 2017 WL 2444356 at *4. Petitioner has provided the Court with no argument to support a showing of actual innocence or cause and prejudice relating to this claim. Accordingly, Petitioner's Double Jeopardy claim is barred.

## E.  Ineffective Assistance of Counsel: Failure to Object to Disparate Co-Defendant Sentences

Petitioner contends that his trial counsel failed to provide effective assistance because he did not raise the issue of disparate sentences between Petitioner and his co-defendants. Petitioner was sentenced to 960 months of incarceration while his co-defendants Orantes and Cruz were sentenced to 660 months and 144 months, respectively.

The Government counters that trial counsel's failure to raise the issue of disparate sentences was a reasonable professional decision in light of Petitioner's role in the charged offenses. The Government notes that Petitioner was charged with more offenses than his co-defendants and was the leader of the gang clique which engaged in the criminal conduct. The Government also observes that Petitioner was the one who actually discharged a firearm in furtherance of the criminal acts. In the Government's view, all of these factors made Petitioner's conduct more egregious than that of his co-defendants, justifying trial counsel's decision not to raise the issue and establishing that Petitioner could not have been prejudiced by the decision.

Petitioner fails to establish that his trial counsel acted objectively unreasonably or that trial counsel's actions prejudiced Petitioner. Trial counsel set forth a number of arguments for a lower sentence in Petitioner's sentencing memorandum and during the colloquy at sentencing. Dkt. Nos. 75, 111. Of note, trial counsel argued that his client objected to the disparate treatment imposed by consecutive sentencing for his offenses. *See* Dkt. No. 111, 43:3–6 ("I can tell you my client . . . feels that the weight and the amount of sentencing comparative to other people in custody is something that I am sure he is going to express."). His decision not to challenge the disparate sentences post-sentencing was a reasonable strategic choice in light of the colloquy at sentencing.

13

The colloquy at sentencing also reveals that Petitioner was not prejudiced by his trial counsel's strategic decisions. In rendering the larger sentence, the Court observed that the evidence adduced at trial demonstrated that Petitioner was a "loyal and avowed MS-13 member and perhaps a midlevel leader" who "enjoyed the opportunity to try and kill two rival gang members." *Id.* 51:18–23. The Court also noted that Petitioner attempted to kill a bystander with no gang affiliation because he was a witness to the other shootings. *See id.* 52:9–15. On the basis of this evidence, the Court found that "there is absolutely no question that [Petitioner] should not be freed into society again." *Id.* 52:17–18. Considering this admonition by the Court, there is no reason to believe that an argument about disparate sentencing between the defendants would have resulted in a lower sentence. "[T]here can be no claim of ineffective assistance where, as here, counsel is alleged to have failed to raise a meritless argument. Failure to raise a meritless argument can never amount to ineffective assistance." *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996). A disparate sentence argument would have been meritless in this case in light of the sentencing colloquy. Accordingly, this ground for relief is denied.

## F.     Ineffective Assistance of Counsel: Failure to Object to Eyewitness Identification

Petitioner also argues that his trial counsel was ineffective for failing to object to eyewitness identification evidence. Specifically, Petitioner contends that Dalton Beck's identification of Petitioner was unconstitutionally suggestive and should have been excluded. Further, he argues that another eyewitness, Malcolm Wilson, was provided an unduly suggestive photo array from which he identified the Petitioner. Petitioner complains that his counsel failed to object to either of these identifications and that this failure constitutes ineffective assistance of counsel.

The Government counters that, although trial counsel did not object to the identifications, he did effectively cross-examine the witnesses and thus performed objectively reasonably. The Government also argues that trial counsel's failure to object to the eyewitness identifications did not prejudice Petitioner because there was overwhelming evidence that Petitioner was the shooter, including his own testimony to that effect.

Trial counsel's conduct was objectively reasonable because he made a reasonable strategic decision not to object to the two witness' identifications of Petitioner, and also because he effectively cross-examined the two in other ways. Trial counsel extensively cross-examined Beck about an earlier encounter with one of the co-defendants in an attempt to establish Beck's bias. Dkt. No. 107, 417–421. And trial counsel cross-examined Wilson as well, eliciting that Wilson did not know Petitioner's name before the day of Wilson's testimony. *Id.* at 462:2–5. Trial counsel's decision not to also object to the witness' identifications of Petitioner was a reasonable strategic choice given that so much other evidence identified Petitioner as the shooter. Such an objection would likely have been fruitless.

Furthermore, Petitioner could not satisfy the "prejudice" prong of *Strickland*. Even if trial counsel had been able to successfully object to the eyewitness identifications, Petitioner's admission that he was the shooter and the surveillance video would have conclusively identified him as such. Since Petitioner would have been identified as the shooter even without the eyewitness testimony, trial counsel's failure to object to the eyewitness identifications could not have prejudiced Petitioner. For the foregoing reasons, the Court denies this ground for relief.

## G. Ineffective Assistance of Counsel: Requesting Improper Jury Instruction or, Alternatively, Appellate Counsel's Failure to Appeal the Jury Instruction

Petitioner contends that appellate counsel was ineffective for failing to appeal the Court's denial of trial counsel's request to instruct the jury on assault with a dangerous weapon as a

15

lesser included offense of attempted murder. In the alternative, Petitioner asks the Court to find that trial counsel was ineffective for requesting this jury instruction at trial.

The Government responds that appellate counsel was not ineffective because there was no grounds on which he could appeal—the requested jury instruction was clearly not appropriate given the Supreme Court's holding in *Schmuck v. United States*, 489 U.S. 705 (1989). The Government also argues that trial counsel's request for the instruction was a reasonable attempt to present the jury with a lesser charge. Further, the Government maintains that the request was not prejudicial because it was made outside the presence of the jury.

Appellate counsel did not provide ineffective assistance for failing to appeal the denial of the requested instruction because that instruction was properly denied. *Schmuck* holds that a lesser included offense instruction is not appropriate "[w]here the lesser offense requires an element not required for the greater offense." *Schmuck*, 489 U.S. at 716. And as the Court noted, "the offenses charged in the indictment have different elements than the proposed [instruction on assault with a dangerous weapon]." Dkt. No. 110, 944:24–945:1. Thus, arguing against exclusion of this instruction would have been meritless, and appellate counsel's "[f]ailure to raise a meritless argument can never amount to ineffective assistance." *Moore v. United States*, 934 F. Supp. at 731.

Petitioner's alternative argument also fails because trial counsel's request for a lesser included offense instruction was a reasonable strategy to minimize his client's criminal liability. Further, Petitioner cannot establish prejudice because the jury was not privy to the discussion of the jury instruction. For the foregoing reasons, this ground for relief is denied.

**H. Ineffective Assistance of Appellate Counsel: Failure to Obtain Copy of Government Closing Arguments at Trial**

Petitioner maintains that appellate counsel was ineffective for failing to obtain a copy of the Government's closing argument at trial. Petitioner suggests that this failure prevented appellate counsel from raising the argument of prosecutorial misconduct.

In response, the Government submits that Petitioner's argument is meritless because Petitioner does not suggest why appellate counsel should have requested a copy of the Government's closing argument.

Contrary to the Government's contention, Petitioner has indicated why appellate counsel should have requested a copy of closing arguments: "in order to raise [the] argument of prosecutorial misconduct." Dkt. No. 180 at 11. In the absence of any further explanation, the Court assumes that Petitioner is referring to his later Count, in which he alleges that the Government violated 18 U.S.C. § 201(c)(2) by using plea agreements, leniency, and payments to informants in order to obtain testimony. For reasons that will be laid out fully below, 18 U.S.C. § 201(c)(2) does not apply to the Government in this case. Thus, arguing for prosecutorial misconduct in violation of the statute would be meritless.

Since failure to raise a meritless argument does not constitute ineffective assistance, and the only proffered use of the Government's closing argument is to make a meritless argument, appellate counsel could not have been ineffective for failing to obtain a copy of the Government's closing argument.

**I. Ineffective Assistance of Counsel: Failure to Object to Court Not Reading Indictment to Jury**

Petitioner argues that trial counsel was ineffective for failing to object to the Court's decision not to read the Indictment to the jury. The Government responds that there is no reason

that the Court should have read the indictment to the jury and that Petitioner does not identify any such reason. Accordingly, trial counsel could not have been ineffective for failing to object.

Petitioner cannot establish ineffective assistance because he does not even allege any way in which the Court's decision not to read the indictment to the jury was improper. Generally, petitioners have different concerns: that reading the indictment to the jury is unfairly prejudicial or that the court improperly amended the indictment. *See, e.g.*, *United States v. Coward*, 669 F.2d 180, 183 (4th Cir. 1982) ("Coward next contends that the District Court impermissibly amended the indictment by omitting references to Coffey when reading it to the jury at the outset of the trial. Coward cites the general rule forbidding amendment of an indictment by the court or prosecutor."). Petitioner does not raise these concerns and admits that the Court properly informed the jury of the charges: "The Court went on to decribe [sic] each of the offenses." Dkt. No. 180 at 11. Though Petitioner notes that the Court did not read the indictment, he does not allege any way in which the Court's instruction fell short of what the indictment could have provided. Because there was no grounds on which trial counsel could object, trial counsel did not provide ineffective assistance for failing to do so. *See Moore*, 934 F. Supp. at 731 ("Failure to raise a meritless argument can never amount to ineffective assistance."). Therefore, the Court denies this ground for relief.

## J.    Prosecutor Violations of 18 U.S.C. § 201(c)(2)

Petitioner claims that the Government violated 18 U.S.C. § 201(c)(2) by calling to the stand witnesses who were obligated to testify as a condition of their plea agreements or who have received payment for serving as confidential informants.

The Government responds that 18 U.S.C. § 201(c)(2) does not apply to the government when it enters into plea agreements, grants leniency, or pays informants to obtain testimony.

18

In relevant part, 18 U.S.C. § 201(c)(2) prohibits "give[ing], offer[ing], or promis[ing] anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial." It is well settled that the statute is inapplicable in this case. *See United States v. Anty*, 203 F.3d 305, 311 (4th Cir. 2000) ("18 U.S.C. § 201(c)(2) does not prohibit the United States from acting in accordance with long-standing practice and statutory authority to pay fees, expenses, and rewards to informants even when the payment is solely for testimony, so long as the payment is not for or because of any corruption of the truth of testimony."); *United States v. Richardson*, 195 F.3d 192, 196–97 (4th Cir. 1999) ("[T]he term 'whoever' as used in § 201(c)(2) does not include the United States acting in accordance with its statutory authority to use immunity, leniency, and plea agreements to obtain truthful testimony."). Petitioner does not allege or provide evidence that any of the Government's witnesses gave false testimony—he simply recounts the ways in which they were compensated for their cooperation. Because there is no allegation that the testimony was untruthful, and because the Government is allowed to obtain truthful testimony in this manner, the Court denies this ground for relief.

K.     **Ineffective Assistance of Appellate Counsel: Failure to Argue For Violation of 18 U.S.C. § 201(c)(2)**

Petitioner argues that appellate counsel was ineffective for failing to argue for violations of 18 U.S.C. § 201(c)(2). The Government responds that, because 18 U.S.C. § 201(c)(2) does not apply to the government's use of plea deals, leniency, and compensation to obtain testimony, it would be unreasonable for appellate counsel to make such an argument.

For the reasons previously stated, a claim that the Government violated 18 U.S.C. § 201(c)(2) is a meritless argument, and failing to raise a meritless argument on appeal does not constitute ineffective assistance of counsel, *see Moore*, 934 F. Supp. at 731. Accordingly,

19

appellate counsel was not ineffective for failing to raise the claim and this ground for relief is denied.

## L. Ineffective Assistance of Counsel: Failure to Move to Suppress Petitioner's Statements

Petitioner claims that trial counsel was ineffective for failing to move to suppress the confession Petitioner made to Detective Claudio Saa and Special Agent Jason Brumbelow. Petitioner contends that trial counsel should have done so because the detectives' notes were the only record of the confession.

The Government counters that the detectives validly *Mirandized* Petitioner, and he has offered no other grounds upon which trial counsel could have moved to suppress the confession.

The evidence produced at trial supports the Government's argument. Detective Claudio Saa testified at trial that he advised Petitioner of his *Miranda* rights in his native language of Spanish and presented Petitioner with a *Miranda* form, which Petitioner read out loud and signed. Dkt. No. 108, 662:12–664:20. That signed *Miranda* form was introduced into evidence. *Id.* at 663:9–20. Petitioner has put forth no reason why his statements after he waived his *Miranda* rights could have been suppressed. Petitioner says only that the sole recording of his statements is the Detectives' notes, but he does not propose any way in which this method of recording could justify suppression of the statements. Moving to suppress Petitioner's confession thus would have been meritless. Since "[f]ailure to raise a meritless argument can never amount to ineffective assistance," trial counsel did not provide ineffective assistance for failing to move to suppress Petitioner's confession. *Moore*, 934 F. Supp. at 731. The Court thus denies this ground for relief.

**M.    Ineffective Assistance of Counsel: Failure to Move to Suppress Petitioner's Immigration Status**

Petitioner contends that trial counsel was ineffective for failing to move to suppress evidence of Petitioner's immigration status. Petitioner's first argument is that the agent who elicited Petitioner's immigration status, Special Agent Jason Brumbelow, did not separately advise Petitioner of his *Miranda* rights. Petitioner also contends that his immigration status did not have a reason to be brought up at trial, and even if it did as an element of Count 12, trial counsel should have requested a limiting instruction to prevent unfair prejudice.

The Government responds that a separate *Miranda* warning was unnecessary because the other interrogator, Detective Claudio Saa, advised Petitioner of his rights at the beginning of the interview in which Petitioner's immigration status was elicited. The Government does not provide a response to the unfair prejudice argument.

Trial counsel's failure to move to suppress Petitioner's immigration status was not objectively unreasonable because the argument that Petitioner was not properly *Mirandized* is meritless. *See supra* III.L. Petitioner has not questioned the Government's assertion that another agent properly *Mirandized* him at the start of the interview in the agent elicited Petitioner's immigration status. Because "a *Miranda* warning does not lose its efficacy if a defendant is warned by one officer and then interrogated by another," a motion to suppress on these grounds would have been meritless. *United States v. Gell-Iren*, 146 F.3d 827, 831 (10th Cir. 1998) (internal quotations omitted). Further, that trial counsel was prepared to object to the agent's testimony before learning that another agent *Mirandized* Petitioner indicates that counsel recognized that the argument would be meritless and made a strategic decision not to pursue it. Dkt. No. 108 at 581:20–583:9.

Trial counsel's failure to request a limiting instruction as to Petitioner's immigration status was not unreasonable because immigration status was an element of Count 12 and trial counsel did make an effort to reduce the likelihood of unfair prejudice. Trial counsel could not ask the Court to suppress Petitioner's immigration status for substantive reasons because that status was an element of Count 12. But trial counsel did immediately offer to stipulate to Petitioner's illegal status when the issue arose at trial. Dkt. No. 108, 585:1–5. That he did not also request a limiting instruction does not render his conduct unreasonable—trial counsel may have felt that such a request would be frivolous or would draw more attention to Petitioner's immigration status. Regardless of trial counsel's reasons for not requesting a limiting instruction, this Court finds that trial counsel acted reasonably in his efforts to prevent unfair prejudice stemming from Petitioner's immigration status.

N.      **Ineffective Assistance of Counsel: Failure to Impeach Government Witness**

Petitioner argues that trial counsel was ineffective for failing to impeach government witness Malcolm Wilson's testimony that Petitioner spoke to him in English before shooting him. Petitioner contends that he is unable to speak English and that the statements he is alleged to have made in English unfairly prejudiced the jury against him, portraying him as a "cold bloody [sic] killer." Dkt. No. 180 at 14.

The Government responds that trial counsel effectively cross-examined Wilson on his familiarity with Petitioner by asking if Wilson knew Petitioner's name before the day of his testimony. The Government contends that this question was sufficient to establish that Wilson was unfamiliar with Petitioner prior to the day of trial. The Government further argues that asking Wilson about Petitioner's inability to speak English would have been fruitless because

Wilson "would likely have responded in the negative and that would have ended that line of inquiry." Dkt. No. 195 at 12.

Trial counsel's cross-examination of Wilson was reasonable under the "performance" prong of *Strickland*. Though trial counsel did not specifically point out that Petitioner did not speak English, he did ask Wilson on cross-examination whether the phrase "can't leave any witnesses" was said in English, and whether it could have been said by one of the men other than Petitioner. Dkt. No. 107, 468:1–14. Trial counsel also elicited in this exchange that Wilson asked Petitioner a question in English, but Petitioner did not respond. *Id.* at 15–20. Thus, trial counsel did attempt to question whether Petitioner made the allegedly prejudicial statement. The Court cannot say that trial counsel provided ineffective assistance for failing to question Wilson about this encounter in the exact way Petitioner now requests.

Further, even if Petitioner were able to establish unreasonable performance, he could not satisfy the second *Strickland* prong. Petitioner contends that trial counsel's failure to impeach Wilson's testimony unfairly convinced the jury that Petitioner was a cold-blooded killer and deprived him of a fair trial. But Petitioner is depicted on video shooting three individuals, and Wilson's testimony that Petitioner shot him was uncontested. Even if trial counsel had convinced the jury that Petitioner did not make the statement in question, there existed plenty of other evidence both to convict Petitioner and to lead the jury to believe that he is a cold-blooded killer. Thus, Petitioner cannot establish any prejudice from trial counsel's failure to impeach Wilson in this way. Accordingly, this ground for relief is denied.

## O.        Ineffective Assistance of Counsel: Failure to Object to Court's Admonishment

Petitioner claims that trial counsel was ineffective for failing to object and move for a mistrial when the Court referred to a high-profile terrorism case, the Moussaoui case, in assuring

the jury that safety measures were in place. Petitioner contends that this reference caused the jury to conflate Petitioner with a terrorist and deprived him of a fair trial.

The Government responds that there was no reason for trial counsel to object and move for a mistrial because the reference to the Moussaoui case was not a comparison to Petitioner's case—it was merely an illustration of the security measures that are in place to protect jurors.

Trial counsel's performance was not unreasonable because the Court made no comparison between Petitioner's case and the Moussaoui case. Thus, there was nothing to which trial counsel could object. The Court mentioned the Moussaoui case as an example of the extensive security measures in place at the courthouse: *See* Dkt. No. 107, 232:12–14 ("As you may know, we have had the Moussaoui terrorism case here in the courthouse, and there was added security for that case."). There was no comparison, either explicit or implicit, between that case and Petitioner's. Because the Court did not compare the two cases, trial counsel made a reasonable strategic choice not to object.

Additionally, Petitioner could not establish any prejudice from trial counsel's decision not to object. The Court asked for an assurance from the jurors that safety concerns would not prejudice them in any way. *See id.* at 233:9–13 ("I want an assurance from you that you can decide this case based on the evidence that you hear in the courtroom and the law that I give you, and not be prejudiced one way or the other for or against any defendant based on safety concerns."). The Court thus addressed any ill effects, however unlikely, that its prior statements could have caused. Because trial counsel acted reasonably in deciding not to object, and because the Court addressed any incidental prejudice from its admonishment, Petitioner cannot establish ineffective assistance on this ground.

**P.**     **Ineffective Assistance of Counsel: Failure to Assure Impartiality of Jury**

Petitioner contends that the Court should have asked each juror of his or her ability to maintain impartiality following one of the juror's safety concerns. Petitioner argues that trial counsel should have objected to the Court's decision not to do so and trial counsel's failure to object constitutes ineffective assistance.

The Government argues in response that the Court's admonition to the jury as a whole was sufficient, so trial counsel could not have been ineffective for failing to object to the Court's decision not to speak with each juror individually.

Trial counsel made a reasonable strategic decision not to object because the Court assured the impartiality of the jury and had no obligation to do so in any particular way. "[F]ederal judges [are] accorded ample discretion in determining how best to conduct the voir dire." *United States v. Caro*, 597 F.3d 608, 614 (4th Cir. 2010) (alterations in original). Further, "the Constitution does not require individual questioning of prospective jurors." *Id.* at 615 n.8. Accordingly, the Court's general admonition to the jury was sufficient to assure its impartiality. As such, trial counsel acted reasonably in not objecting and this ground for relief fails.

**Q.**     **Accumulation of Errors Denied Petitioner a Fair and Impartial Trial**

Finally, Petitioner argues that the accumulation of errors that he alleges deprived him of a fair trial in violation of Due Process. In response, the Government says that because none of Petitioner's individual claims of error have merit, he cannot rely on the cumulative errors doctrine.

The Fourth Circuit reviews ineffective assistance of counsel claims and claims of trial court error individually rather than collectively. *See Fisher v. Angelone*, 163 F.3d 835, 852 (4th

Cir. 1988). Because the Court finds no individual errors with respect to Petitioner's claims, there is no basis for relief for an accumulation of errors. Accordingly, this ground for relief is denied.

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** Petitioner's Amended Motion Motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Dkt. 180) as well as his Supplemental Motion under 28 U.S.C. § 2255 (Dkt. No. 226) and **DISMISSES** the petition.

An appropriate order shall issue.

August 18, 2017
Alexandria, Virginia

Liam O'Grady
United States District Judge